1.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TIMOTHY C. ROTE**, | Case No. 3:19-cv-1988-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, UNITED STATES JUDICIAL DEPARMENT OF JUSTICE**, OREGON STATE BAR and PROFESSIONAL LIABILITY FUND, OREGON JUDICIAL DEPARTMENT, COLORADO JUDICIAL DEPARTMENT, THE HON. ROBERT KUGLER, THE HON. MICHAEL MOSMAN, THE HON. MARCO HERNÁNDEZ, THE HON. PAUL PAPAK, THE HON. ELIZABETH WEISHAUPL, THE HON. ROBERT HERNDON, THE HON. JAMES EGAN, THE HON. KATHIE STEELE, BILLY WILLIAMS, CAROL BERNICK, NANCY WALKER, and JOHN DOES 1-5**, | |
| Defendants. | |

Timothy C. Rote, *pro se*.

Scott Erik Asphaug, Acting United States Attorney, and Jared D. Hager, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the Committee on Judicial Conduct and

PAGE 1 – OPINION AND ORDER

Disability of the Judicial Conference of the United States, United States Department of Justice, Hon. Robert Kugler, Hon. Paul Papak, Hon. Marco Hernández, Hon. Michael Mosman, Nancy Walker, and Billy Williams.

Ellen F. Rosenblum, Attorney General, and Nathaniel Aggrey, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants Oregon Judicial Department, Hon. Robert Herndon, Hon. James Egan, and Hon. Kathie F. Steele.

Joseph Arellano and Matthew J. Yium, FOSTER GARVEY PC, 121 SW Morrison Street, Portland, OR 97204. Of Attorneys for Defendants Professional Liability Fund, Carol Bernick, and Oregon State Bar.

**Michael H. Simon, District Judge.**

Plaintiff Timothy Rote, representing himself, brings this lawsuit against several state and federal judges, several state and federal agencies, a court reporter, and others. Plaintiff alleges that Defendants have engaged in a conspiracy to retaliate against him and deprive him of his constitutional and civil rights. Plaintiff's claims arise from events relating to a series of lawsuits spanning more than 20 years. Plaintiff alleges that many of the individual defendants used their positions of authority to carry out personal vendettas against him.

Now before the Court are three motions to dismiss filed by three sets of Defendants: (1) the Oregon Judicial Department, Judge Robert Herndon, Judge James Egan, and Judge Kathie Steele (collectively, the State Defendants); (2) the Professional Liability Fund (PLF), Carol Bernick (the previous executive director of the PLF), and the Oregon State Bar; and (3) the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States (the Federal Judicial Conduct Committee), the United States Department of Justice, U.S. District Judge Robert Kugler, U.S. Magistrate Judge Paul Papak, Chief U.S. District Judge Marco A. Hernández, U.S. District Judge Michael W. Mosman, former U.S. Attorney Billy Williams, and

retired court reporter Nancy Walker (collectively, the Federal Defendants).[1] At oral argument, Plaintiff stated that he did not object to the dismissal of the following four Defendants: the Oregon State Bar, the Federal Judicial Conduct Committee, the U.S. Department of Justice, and Billy Williams. Accordingly, the Court dismisses these four Defendants. For the reasons stated below, the Court grants all pending motions to dismiss and dismisses all claims asserted against all remaining Defendants other than the two Colorado Defendants.

## STANDARDS

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Thus, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party or by the court on its own initiative at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th

---

[1] Two additional Defendants, the Colorado Judicial Department and Colorado Judge Elizabeth Weishaupl (collectively, the Colorado Defendants), have not yet filed an answer or other responsive pleading in this action. At oral argument, Plaintiff stated that he intends to move for default against the Colorado Defendants. Accordingly, this Opinion and Order does not resolve any claim asserted against the two Colorado Defendants.

Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even sua sponte if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

**B.  Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."

*Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original)

(quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under

Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." This

standard "does not require 'detailed factual allegations'" but does demand "more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

Plaintiff's allegations arise from a series of lawsuits spanning more than 20 years in state

and federal court. Because Plaintiff's claims in this action arise from Defendants' alleged

conduct throughout this history of litigation, the Court recounts Plaintiff's allegations about each

lawsuit. Plaintiff has included as defendants in these various lawsuits, including in this action,

the judges, attorneys, and court staff who have ruled against him or have otherwise taken actions

that Plaintiff challenges. Plaintiff alleges in this action that his current list of defendants here

retaliated against his exercise of free speech and conspired against him to deprive him of

procedural due process. At the request of the parties, the Court takes judicial notice of the

dockets and court filings in the following cases involving Plaintiff: *Jones v. North West

Telemarketing Inc.*, Case No. 99-cv-990-JO (D. Or.); *Zweizig v. Rote*, Civ. No. 04-2025(RBK)

(D. N.J.); *Northwest Direct Teleservices, Inc. v. Zweizig*, Case No. 3:11-cv-910-PK (D. Or.);

*Zweizig v. Northwest Direct Teleservice, Inc.*, Case No. 3:15-cv-2401-HZ (D. Or.); *Rote v.

Marshall*, Clackamas County Case No. 16CV07564; *Rote v. Brandsness*, Clackamas County

Case No. 18CV45257; and *Rote v. Marshall*, Case No. 3:19-cv-82-MO (D. Or.). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that courts "may take judicial notice of court filings and other matters of public record"). The Court recites the following facts as alleged in Plaintiff's Second Amended Complaint and the additional facts of which the Court has taken judicial notice. Solely for purposes of the pending motions to dismiss, the Court accepts as true all well-pleaded facts stated in the Second Amended Complaint.

**A.  Judge Jones Lawsuit**

In 1999, a former employee of one of Plaintiff's companies, Northwest Direct Teleservices, Inc. (Northwest Direct), sued that company in Oregon federal court. U.S. District Judge Robert E. Jones presided over that case. Shortly after the jury awarded damages to the plaintiff in that lawsuit, according to Plaintiff here, the plaintiff in the earlier lawsuit, who also shared the last name "Jones," stated that he was related to Judge Jones. Plaintiff here then sent a letter to Judge Jones asking him to recuse himself. Judge Jones held a hearing on that request for recusal, and during the hearing, Judge Jones expressed his concern with Mr. Rote's letter. Judge Jones stated: "I don't want anything to do with this case. I have utter contempt for this person. He wrote the court a very personal, very nasty letter. A hypocrite. So, get out of here. I am not going to have anything to do with this. I will recuse myself." ECF 57-7, at 4. In this action, Plaintiff refers to the transcript from that hearing as the "Jones Transcript." Plaintiff alleges that several of the Defendants here filed the Jones Transcript in later lawsuits to retaliate against Plaintiff for seeking recusal of Judge Jones.

**B.  2003 Employment Lawsuits and Arbitration**

**1.  Judge Kugler Litigation**

The genesis of Plaintiff's current dispute with Defendants here begins with the circumstances of Max Zweizig's termination of employment from Plaintiff's business, Northwest Direct. Plaintiff alleges that Zweizig tried to extort him by destroying Northwest Direct's critical programming code and demanding a raise in exchange for restoring the company's software system. Plaintiff then fired Zweizig. At some point near the end or shortly after Zweizig's termination of employment, Zweizig returned a hard drive to Northwest Direct. Plaintiff then hired an investigator to conduct a forensic report of the contents of that hard drive. The investigator allegedly discovered that the hard drive contained child pornography. Plaintiff has attempted to introduce that report in nearly all subsequent litigation involving Zweizig and alleges in this action that because the judges presiding over those various lawsuits have either excluded that evidence or otherwise ruled against Plaintiff, those judges are engaged in a conspiracy to facilitate child trafficking and disseminate child pornography.

After Plaintiff fired Zweizig, Zweizig sued Northwest Direct in New Jersey state court, alleging that Plaintiff fired him in retaliation for Zweizig's accusation that Northwest Direct overbilled its clients. Northwest Direct removed the case to federal court in New Jersey, with U.S. District Judge Robert Kugler presiding. Plaintiff alleges that during that litigation Zweizig's girlfriend, Sandra Ware, met with one of Judge Kugler's law clerks, who allegedly was a law school classmate with Ware. Plaintiff further alleges that during that meeting, Ware gave the law clerk a copy of the Jones Transcript. Shortly thereafter, Judge Kugler remanded the case back to New Jersey state court. Plaintiff alleges that Judge Kugler's decision to remand is a "self-evident act of prejudice" and an attempt to deny Plaintiff due process.

At some point thereafter, Plaintiff sent a letter to Judge Kugler, enclosing a copy of the forensic report of Zweizig's hard drive. Plaintiff also included in his letter an accusation that Judge Kugler's law clerk had improperly met with Ware to receive from Ware a copy of the Jones Transcript. Judge Kugler issued an order to show cause why Plaintiff should not be held in criminal contempt for sending that letter. Plaintiff then filed a judicial ethics complaint against Judge Kugler. Plaintiff refers to the transcript from the hearing before Judge Kugler to determine whether Plaintiff should be held in contempt as the "Kugler Transcript." After that hearing, Judge Kugler allegedly called Plaintiff into chambers and asked him to withdraw his judicial ethics complaint against Judge Kugler. Plaintiff also alleges, albeit on information and belief, that the Federal Judicial Conduct Committee "endorses" retaliation by federal judges against litigants who file ethics complaints.

### 2. Crow Arbitration

On remand, the New Jersey state court transferred the case to arbitration in Portland, Oregon. The parties began arbitration in 2006 with Portland attorney William Crow (since deceased) serving as the arbitrator. Plaintiff alleges that Zweizig's Oregon attorney, Linda Marshall, sent Crow copies of the Jones and Kugler Transcripts. Plaintiff also alleges that Zweizig filed copies of the Jones and Kugler Transcripts in New Jersey state court before the parties were ordered to arbitrate.

While arbitration was pending, Plaintiff learned that Crow and Marshall had previously been law partners for 14 years. When Plaintiff expressed concern over that prior professional relationship, Crow notified the Arbitration Services of Portland, which then undertook the decision of whether Crow should remain serving as the arbitrator. The Arbitration Services of Portland ultimately decided that Crow should remain the arbitrator. The following year, Zweizig prevailed in that arbitration. Plaintiff alleges, also on information and belief, that Judge Kugler

and U.S. District Judge Mosman "solicited" that result from Crow. Plaintiff then filed a professional ethics complaint against Marshall for allegedly advising Zweizig to destroy evidence, aiding and abetting perjury, and lying to arbitrator Crow. Plaintiff also filed an professional ethics complaint against Crow, who at the time was the Chair of the Oregon State Bar's Disciplinary Board.

### 3.  Judge Papak Litigation

Plaintiff filed a motion to vacate the arbitration award in Oregon federal court, with U.S Magistrate Judge Paul Papak presiding. Plaintiff alleged that Crow and Marshall's prior professional relationship improperly influenced Crow's award to Zweizig. Judge Papak, however, confirmed the arbitration award. Plaintiff alleges that Judge Papak's refusal to vacate the arbitration award is "self-evident" of his prejudice against Plaintiff and Judge Papak's intent to deny Plaintiff due process. Plaintiff states that he later met with Crow in February 2017, during which time Crow allegedly "admitted" that he did not have the stamina to look at all the evidence during the arbitration and had used a draft opinion written by Marshall. After Crow's death in 2020, Plaintiff dismissed his claims against Crow in this lawsuit.

### C.  Judge Hernández Lawsuit

After the conclusion of the arbitration before Crow and the affirmance of the arbitration award in federal court by Judge Papak, Plaintiff created an online blog and began writing posts about the arbitration. Zweizig then sued Plaintiff in Oregon federal court in 2015, alleging retaliation and employment discrimination. In that lawsuit, Zweizig alleged that Plaintiff posted to his blog to retaliate against Zweizig prevailing in arbitration. U.S District Judge Marco Hernández presided over that lawsuit, and attorneys Joel Christiansen and Linda Marshall represented Zweizig. Plaintiff alleges that Zweizig filed copies of the Jones and Kugler Transcripts to "bias" Judge Hernández. Plaintiff then filed his own motion to compel arbitration,

which Judge Hernández denied. Plaintiff also asserted counterclaims against Zweizig and his attorneys, alleging defamation and malicious prosecution, among other things. Judge Hernández granted Zweizig and his attorneys' anti-SLAPP motion to strike Plaintiff's counterclaims.

Zweizig's claims against Plaintiff proceeded to trial. Before trial, Judge Hernández granted Zweizig's motion *in limine* to exclude Plaintiff's forensic report of Zweizig's hard drive. Judge Hernández also excluded other exhibits that Plaintiff had sought to introduce. Plaintiff alleges that Judge Hernández "intentionally made [an] objectively unreasonable ruling to punish Plaintiff for his free speech and to deny his right of due process," asserting that Judge Hernández only received in evidence five of the 60 exhibits that Plaintiff had offered in evidence. ECF 51, ¶ 92.

Plaintiff also alleges that the court reporter in that trial, Nancy Walker, "intentionally falsified" the trial transcript by omitting two statements that Christiansen allegedly made during his closing argument. Christiansen allegedly stated that Plaintiff had made $4 million per year and that the jury should consider that income in awarding damages. Plaintiff asked Walker to check to see if she made any errors in her transcript, and Walker responded that she had made no errors.

At the close of the trial in 2018, the jury awarded Zweizig $1 million in damages. Judge Hernández applied a damages cap under Oregon law, reducing the judgment to $500,000. Both parties appealed. On appeal, the Ninth Circuit affirmed Judge Hernández's pretrial rulings but certified to the Oregon Supreme Court the question of whether the statutory damages cap applied in these circumstances. The Oregon Supreme Court answered that the cap did not apply, and the Ninth Circuit remanded the case to Judge Hernández, who then amended the judgment to reflect the $1 million jury verdict. Plaintiff alleges, on information and belief, that Defendants

"solicited" Ninth Circuit Judge Paez, one of the judges on the panel, to refuse to follow Oregon

law in ruling against Plaintiff to "facilitate the trafficking of children."

     In March 2021, Zweizig moved for a writ as part of his execution of judgment. Zweizig

asked for a writ that would allow him to sell Plaintiff's home in Oregon. Deschutes County

Circuit Court Judge Wells Ashby granted the writ. Plaintiff alleges, on information and belief,

that Defendants "solicited" Judge Ashby to grant the writ in retaliation for Plaintiff's filing the

pending lawsuit.

## D.  Judge Herndon Lawsuit

     After Judge Hernández dismissed Plaintiff's counterclaims, Plaintiff sued the Oregon

State Bar, Christiansen, and Marshall in Clackamas County Circuit Court, alleging conspiracy,

racketeering, defamation, and intentional infliction of emotional distress, among other claims.

Judge Robert Herndon presided over that lawsuit. Plaintiff alleged that the Oregon State Bar

failed to investigate properly Plaintiff's ethics complaints against Christiansen and Marshall.

Plaintiff also alleged that the Oregon State Bar, Christiansen, and Marshall conspired to retaliate

against Plaintiff for his blog posts critical of the judiciary. The Professional Liability Fund hired

counsel to represent Christiansen and Marshall.

     The defendants in that action filed anti-SLAPP motions, and Plaintiff alleges that during

the anti-SLAPP litigation, Christiansen, Marshall, and their attorneys made false statements to

the U.S. Marshal Service that Plaintiff posed a threat to Judge Jones. According to Plaintiff, the

U.S. Marshal Service then placed Plaintiff on their watch list. Plaintiff also alleges that counsel

for Christiansen and Marshall filed copies of the Jones and Kugler Transcripts to "bias" Judge

Herndon, who then granted the defendants' anti-SLAPP motions.

     Plaintiff then filed ethics complaints against Christiansen and Marshall. In the pending

lawsuit, Plaintiff alleges that Christiansen committed perjury in his declaration filed in support of

his anti-SLAPP motion. The Oregon State Bar took no disciplinary action against Christiansen or Marshall. Plaintiff also alleges here that the Oregon State Bar aided and abetted Christiansen and Marshall's efforts to deny Mr. Rote's right to due process. After filing his bar complaints, Plaintiff filed a motion to set aside the judgment dismissing his claims, contending that Christiansen and Marshall had committed fraud on the court. Judge Herndon denied that motion.

In the pending lawsuit, Plaintiff alleges, on information and belief, that Judge Papak contacted Judge Herndon to request that he deny Plaintiff due process. Plaintiff then appealed the dismissal of his claims to the Oregon Court of Appeals. Judge James Egan, a judge on the Oregon Court of Appeals, had allegedly previously served as counsel for Zweizig. Plaintiff requested that Judge Egan "not get involved with the appeal." ECF 51, ¶ 89. Plaintiff alleges that the appellate court ignored his request. The Oregon Court of Appeals affirmed Judge Herndon's dismissal. Plaintiff alleges, on information and belief, that Judge Egan solicited other members of the Oregon Court of Appeals to affirm the dismissal without an opinion and deny Plaintiff due process.

Plaintiff later renewed his motion to set aside the judgment. Judge Susie Norby denied the motion. Plaintiff alleges, on information and belief, that Judge Norby was seeking appointment to the Oregon Court of Appeals and met with Judge Egan before ruling on the motion and that she denied Plaintiff's motion to show her solidarity with Judge Egan.

**E.  Judge Mosman Lawsuit**

After the Oregon Court of Appeals affirmed Judge Herndon's dismissal of Plaintiff's claims, Plaintiff filed a new lawsuit in Clackamas County Circuit Court in 2018 against Marshall, Christiansen, the PLF, Carol Bernick, and Nancy Walker. Plaintiff asserted, among other claims, a state law racketeering claim against all defendants; defamation and intentional infliction of emotional distress claims against Marshall and Christiansen for allegedly making

false statements to Judge Jones's deputy clerk; a malpractice claim against his own prior attorney for failing to file a motion to compel arbitration before filing an answer; a breach of contract claim against the PLF for refusing to cover Plaintiff's malpractice claim; and a fraud claim against Nancy Walker for allegedly falsifying the transcript of the trial in the Judge Hernández Lawsuit. The United States substituted itself as a defendant in place of Walker and then removed the case to Oregon federal court. Judge Mosman presided over that action, granted the United States' motion to dismiss, and entered partial judgment dismissing the United States from the lawsuit. Judge Mosman later granted the remaining defendants' motion to dismiss. Plaintiff alleges, on information and belief, that Judge Kugler "solicited" Judge Mosman's dismissal because they both had served as judges on the Foreign Intelligence Surveillance Court.

Plaintiff appealed, and the Ninth Circuit reversed and remanded. The Ninth Circuit explained that after dismissing the only federal defendant, the court lacked subject matter jurisdiction over the remaining state law claims. On remand, Judge Mosman sent the case back to Clackamas County Circuit Court.

## F.  Present Action

In May 2019, Plaintiff filed his complaint in this action. Plaintiff named as defendants nearly every federal and state court judge that played a part in adjudicating his prior lawsuits, as well as former U.S. Attorney Billy Williams, court reporter Nancy Walker, former executive director of the PLF Carol Bernick, the Federal Judicial Conduct Committee, the U.S. Department of Justice, the Oregon Judicial Department, the Oregon State Bar, the PLF, and the two Colorado Defendants. Here, Plaintiff asserts the following: (1) a claim under 42 U.S.C. § 1983 against all Defendants for violating Plaintiff's First Amendment rights; (2) a claim under § 1983 against all Defendants for violating Plaintiff's right to procedural due process; (3) a claim under § 1985 against all Defendants for conspiracy to violate Plaintiff's civil rights; and (4) a claim for

declaratory and injunctive relief against the state and federal agency Defendants requiring that they restructure the PLF, supplement training and policies to ensure the protection of free speech, and open investigations into the individual Defendants, other individuals associated with the Plaintiff's litigation history, the Oregon State Bar, and the PLF.

Plaintiff originally filed his complaint in the District Court for the District of Columbia, which transferred the action to the U.S. District Court for the District of Oregon, with Judge Mosman presiding. After dismissing Plaintiff's complaint in the case that had been removed from Clackamas County Circuit Court but before the Ninth Circuit reversed, Judge Mosman *sua sponte* dismissed Plaintiff's claims in this lawsuit under the doctrine of claim preclusion, formerly known as "res judicata." Plaintiff appealed that dismissal, and the Ninth Circuit reversed. The Ninth Circuit explained that because it had vacated the judgment dismissing Plaintiff's claims in the removed Clackamas County case, that judgment could not provide preclusive effect in this action.

On remand, Judge Mosman recused himself based on threats and other concerning conduct directed at Judge Mosman and his family. After the case was reassigned to the undersigned, the Court granted Plaintiff's motion for leave to file a second amended complaint, which added several defendants, including Judge Mosman. Now before the Court are three motions to dismiss, filed by the following sets of Defendants: (1) the Federal Judicial Conduct Committee, U.S. Department of Justice, U.S. District Judge Kugler, U.S. Magistrate Judge Papak, U.S. District Judge Hernández, U.S. District Judge Mosman, retired court reporter Nancy Walker, and former U.S. Attorney Billy Williams; (2) the Oregon Judicial Department, state court Judge Robert Herndon, state court appellate Judge James Egan, and state court Judge

Kathie Steele; and (3) the PLF, former executive director of the PLF Carol Bernick, and the

Oregon State Bar.

## DISCUSSION

### A. State Defendants' Motion to Dismiss

#### 1. Oregon Judicial Department

"Generally, States are immune from suit under the terms of the Eleventh Amendment and

sovereign immunity." *Whole Women's Health v. Jackson*, --- S. Ct. ---, 2021 WL 5855551, at *5

(2021). Specifically, under the Eleventh Amendment, states are protected from suit in federal

court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). That

immunity extends to state agencies and "arms of the state." *Regents of the Univ. of Cal. v.*

*Doe*, 519 U.S. 425, 429-30 (1997). There are two exceptions to the Eleventh Amendment's

jurisdictional bar: (1) Congress can abrogate the Eleventh Amendment without the consent of the

states in certain situations; and (2) a state may waive its immunity by consenting to suit in

federal court but must do so by "the most express language or by such overwhelming implication

from the text as [will] leave no room for any other reasonable construction." *Micomonaco v.*

*State of Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (alteration in original) (quoting

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985)).

The Oregon Judicial Department is the "predominant administrative agency" within

Oregon's judicial branch and therefore protected by Eleventh Amendment immunity. *See Sharer*

*v. Oregon*, 581 F.3d 1176, 1179 (9th Cir. 2009) (stating that the Oregon Judicial Department is

an administrative agency within Oregon's judicial branch); *Hsieh v. Or. Jud. Dep't Dist. 4*

*Multnomah Cnty.*, 2021 WL 5263192, at *3 (D. Or. Nov. 10, 2021) (stating that the Oregon

Judicial Department is equivalent to the State of Oregon); *Hershey v. McMahon*, 2020

WL 913087, at *4 (D. Or. Jan. 14, 2020) (stating that the Eleventh Amendment barred the

plaintiff's suit against the Klamath County Circuit Court because it was a "part of the Oregon

Judicial Department, which is part of the State of Oregon"); *Thomas v. Oregon*, 2010

WL 3528723, at *1 (D. Or. Sept. 8, 2010) (dismissing the plaintiff's claims against the Oregon

Judicial Department because it was immune from suit). The Court therefore lacks subject matter

jurisdiction over Plaintiff's claims against the Oregon Judicial Department unless Congress has

abrogated state sovereign immunity or the State of Oregon has waived its immunity with respect

to these claims.

      Neither exception applies here. First, Congress has not abrogated state sovereign

immunity with respect to Plaintiff's claims. Congress did not abrogate state sovereign immunity

when it enacted §§ 1983 and 1985. *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001)

("[T]he Supreme Court has attributed to the Congress that passed § 1983 knowledge of then-

existing common-law immunities, and the lack of an explicit abrogation of these immunities has

been interpreted as preserving them."); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016)

(stating that § 1985 does not abrogate state sovereign immunity); *Barclay v. Or. Dep't of J.*, 2019

WL 3806043, at *2 (D. Or. Aug. 13, 2019) (stating that § 1985 does not abrogate state sovereign

immunity). Although the Eleventh Amendment does not bar suits for prospective injunctive

relief against state officials under the Declaratory Judgment Act, *see Austin v. State Indus. Ins.

Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991), the Act does not abrogate Eleventh Amendment

immunity against a state or its agencies. *See Kleidman v. Willhite*, 2020 WL 5823278, at *12

(C.D. Cal. Aug. 20, 2020) (stating that the Eleventh Amendment barred the plaintiff's claim

under the Declaratory Judgment Act against California courts); *Wielgos v. Idaho Bd. of Land

Comm'rs*, 2016 WL 3640609, at *4 (D. Idaho June 29, 2016) (concluding that the Declaratory

Judgment Act did not abrogate the state agency defendant's Eleventh Amendment immunity);

*Emberg v. U. of Maryland U. Coll. Asian Div.*, 3 F. Supp. 2d 1127, 1131 (D. Haw. 1998) ("The Declaratory Judgment Act is a procedural statute, and therefore has no language regarding abrogation of a state's Eleventh Amendment immunity.").

Second, the State of Oregon has not consented to suit in federal court by removal or express waiver. *See Todd v. Oregon*, 2014 WL 1217964, at *4 (D. Or. Mar. 19, 2014) ("[T]he State of Oregon did not remove this action to federal court, nor does it appear that the State of Oregon has waived its sovereign immunity from suit in federal court for civil rights actions."). The Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the Oregon Judicial Department. Thus, the Court dismisses all of Plaintiff's claims against the Oregon Judicial Department without prejudice, but without leave to amend in this Court. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice."); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (order) ("Dismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a competent court." (simplified)).

### 2.  State Judges

#### a.  Judicial Immunity

Judges are absolutely immune from liability for damages, declaratory relief, and generally for injunctive relief sought as a result of judicial acts performed in their judicial capacity. *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996), *superseded by statute on other grounds*; *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also Craig v. Villicana*, 676 F. App'x 716 (9th Cir. 2017). To qualify for judicial immunity, a judge must have performed "judicial acts" within the scope of his or her jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). "An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial

capacity." *McGuire v. Clackamas Cnty. Counsel*, 2009 WL 4456310, at *4 (D. Or.

Nov. 24, 2009) (citing *Stump*, 435 U.S. at 362). Judges have "absolute immunity even when their

actions are erroneous, malicious, or in excess of judicial authority." *Tanner v. Heise*, 879

F.2d 572, 576 (9th Cir. 1989).

Further, allegations that judicial decisions were "conditioned upon a conspiracy or

bribery," including allegations that a judge entered into a conspiracy "to predetermine the

outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the

immunity extended to judges." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en

banc). Judicial immunity applies so long as "the judge's ultimate acts are judicial actions taken

within the court's subject matter jurisdiction." *Id.*; *see also McCarthy v. Mayo*, 827

F.2d 1310, 1314-15 (9th Cir. 1987) (holding that allegations of conspiracy do not remove quasi-

judicial immunity); *Khazali v. Berns*, 2016 WL 4479915, at *2 (W.D. Wash. Aug. 24, 2016)

("Judicial immunity applies even if there are allegations that a judicial decision resulted from a

bribe or a conspiracy."); *Gozzi v. County of Monterey*, 2014 WL 6988632, at *7 (N.D. Cal.

Dec. 10, 2014) ("Moreover, even if the Judicial Defendants had acted corruptly and received

bribes, as Plaintiff appears to allege, they would still be immune from Plaintiff's § 1983 claim.").

Plaintiff brings his §§ 1983 and 1985 claims against state Judges Herndon, Egan, and

Steele for their alleged solicitation of rulings unfavorable to Plaintiff from other judges. Plaintiff

conceded in his briefing on Defendants' motions to dismiss that judicial immunity applies to a

judge's judicial acts, such as ruling on motions and presiding over trials. Plaintiff contends,

however, that judicial immunity does not protect these judges' "solicitation" of adverse rulings

from *other* judges. For purposes of the pending motions to dismiss, the Court will assume

without deciding that solicitation of adverse rulings from other judges is a nonjudicial act that is not protected by judicial immunity.

### i. Judge Herndon

Plaintiff alleges that Judge Herndon had a "*quid pro quo*" arrangement with the PLF at the time he granted the anti-SLAPP motion dismissing Plaintiff's claims against Marshall, Christiansen, and the OSB in Clackamas County Circuit Court. ECF 51, ¶ 17. Plaintiff also alleges that Judge Herndon: (a) admitted that the Jones and Kugler Transcripts influenced his decision to grant the anti-SLAPP motion, (b) refused to consider Plaintiff's new evidence while his order of dismissal was on appeal, (c) later denied Plaintiff's motion to set aside the judgment, and (d) engaged in a conspiracy with federal Judges Kugler, Papak, and Mosman to retaliate against Plaintiff's critiques of courts and deny him due process. ECF 51, ¶¶ 85, 88, 158. These acts, even considering Plaintiff's allegations of conspiracy and bribery, are judicial in nature for which Judge Herndon has absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078 (reviewing the Ninth Circuit's line of cases regarding judicial immunity and concluding that allegations of conspiracy or bribery, including a conspiracy to predetermine the outcome of a case, do not foreclose judicial immunity). The Court therefore dismisses Plaintiff's claims against Judge Herndon with prejudice, concluding that any further amendment would be futile.

### ii. Judge Egan

Plaintiff alleges that Judge Egan, a judge on the Oregon Court of Appeals, solicited other judges on the Oregon Court of Appeals to affirm Judge Herndon's dismissal of Plaintiff's claims without an opinion and without considering his new evidence. ECF 51, ¶¶ 18, 90, 156. Plaintiff alleges that Judge Egan is seeking appointment as a federal magistrate judge and was part of a broader conspiracy with other state and federal judges to retaliate against Plaintiff by denying him due process. ECF 51, ¶¶ 90, 158. Even if Judge Egan had wanted or sought appointment as a

federal magistrate judge, the Court concludes that, based on the allegations presented, it is not plausible that Judge Egan would have improperly solicited the Oregon Court of Appeals' decision in retaliation against Plaintiff. This allegation is therefore not entitled to a presumption of truth because Plaintiff has not alleged sufficient underlying facts in support. *See Starr*, 652 F.3d at 1216 ("[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Plaintiff also alleges that Judge Egan asked Judge Norby, a state trial judge with the Clackamas County Circuit Court, to deny Plaintiff's renewed motion to set aside the judgment in the Judge Herndon Lawsuit. ECF 51, ¶ 95. Plaintiff argues that this conduct by Judge Egan is not subject to judicial immunity because it does not involve a judicial act by Judge Egan, who was not adjudicating a case involving Plaintiff.

Plaintiff alleges, on information and belief, that Judge Norby is seeking appointment to the Oregon Court of Appeals and so denied Plaintiff's motion at Judge Egan's request as an "act of solidarity" with Judge Egan. ECF 51, ¶ 95. As with Plaintiff's allegations about Judge Egan's alleged pursuit of a federal magistrate position, even if Judge Norby had wanted or sought appointment to the Oregon Court of Appeals, Plaintiff's allegations that either Judge Egan or Judge Norby would act improperly, without further allegations, are not plausible. Thus, Plaintiff's conclusory allegation that Judge Egan solicited Judge Norby's denial of Plaintiff's motion in retaliation against him is not well-pleaded. *See Starr*, 652 F.3d at 1216; *see also Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208-09 (9th Cir. 2005) (rejecting the plaintiffs'

allegation made "on information and belief" and stating: "the allegation is entirely speculative and conclusory in nature. No facts are offered in support of the [plaintiffs'] theory").

Accordingly, Plaintiff has not alleged sufficient facts to show that Judge Egan engaged in the nonjudicial act of improperly speaking with a judge in another court to solicit a particular ruling adverse to Plaintiff. The Court therefore dismisses Plaintiff's claims against Judge Egan arising from any alleged nonjudicial acts without prejudice. If Plaintiff believes that he can allege sufficient facts to show with plausibility that his claims against Judge Egan are not subject to judicial immunity, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### iii. Judge Steele

Plaintiff alleges that Judge Steele denied Plaintiff's motion for default judgment against Zweizig, refused to reopen a protective order under seal, approved of her staff's refusal to allow Plaintiff to file documents in several cases, and conspired with federal Judges Kugler, Papak, and Mosman to retaliate against Plaintiff by denying him due process. ECF 51, ¶¶ 23, 107, 109, 158. These acts, even considering Plaintiff's allegations of conspiracy, are all judicial in nature for which Judge Steele has absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078. The Court therefore dismisses Plaintiff's claims against Judge Steele arising from these judicial acts with prejudice.

Plaintiff also alleges that Judge Steele requested legal representation for Zweizig from the PLF and solicited state trial Judge Ann Lininger, who serves on the Clackamas County Circuit Court, to award Zweizig "excessive and unlawful legal fees" incurred in litigating an anti-SLAPP motion to strike Plaintiff's counterclaims in a fraudulent transfer action related to the judgment against him in the Judge Hernández Lawsuit. ECF 51, ¶¶ 23, 115. Assuming without deciding that these acts are nonjudicial, the Court nevertheless concludes that Plaintiff's

allegations are implausible, at least without more, and thus conclusory and not well-pleaded.

Plaintiff has alleged no facts supporting his conclusion that Judge Steele improperly asked the

PLF to provide representation to Zweizig or asked Judge Lininger to award excessive fees in the

fraudulent transfer action. Plaintiff, therefore, has failed to allege sufficient facts to show that

Judge Steele engaged in any actionable nonjudicial acts. *See Starr*, 652 F.3d at 1216. The Court

dismisses Plaintiff's claims against Judge Steele arising from any nonjudicial acts without

prejudice. If Plaintiff believes that he can allege sufficient facts showing his claims against Judge

Steele arise from nonjudicial acts, he may file a motion to amend under Rule 15 that complies

with Local Rule 15-1.

### b. 42 U.S.C. § 1985

Plaintiff asserts a claim under § 1985 against all Defendants, alleging a conspiracy to

deprive him of civil rights. To state a claim for conspiracy to discriminate under 42

U.S.C. § 1985(3), however, a plaintiff must allege the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges and immunities under the laws; and
> (3) an act in furtherance of this conspiracy; (4) whereby a person is
> either injured in his person or property or deprived of any right or
> privilege of a citizen of the United States.

*Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). To satisfy the first element, a plaintiff must

show the existence of a conspiracy or that the defendants agreed to deprive or attempt to deprive

the plaintiff of a protected right. *See Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998); *see*

*also Winstead v. District of Columbia*, 840 F. Supp. 2d 149, 161 (D.D.C. 2012). "A mere

allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police*

*Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). An express agreement need not be proven—the

"conspiracy can be inferred from conduct." *Scott*, 140 F.3d at 1284; *see also United States v.*

*Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987). A plaintiff must also show that the conspiracy

was "motivated by a purpose (malevolent or benign) directed specifically at" a protected

class. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

Even if Plaintiff could allege sufficient facts to overcome judicial immunity, he still fails

to state a claim under § 1985 against the state judge Defendants because he has not alleged that

they engaged in any discrimination based on a protected class. Plaintiff argues that he was

discriminated against as a "class of one." The Supreme Court, however, has recognized a class-

of-one equal protection claim only "where the plaintiff alleges that [he or] she has been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff asserts that "collusion between state and federal actors" shows discrimination against

him as a class of one. Plaintiff does not, however, plausibly allege facts showing that the state

judge Defendants treated him differently than similarly situated individuals without any rational

basis. Thus, even if Plaintiff had alleged facts showing his § 1985 claim arose out of the state

judge Defendants' nonjudicial acts, his § 1985 claim would still fail because he has not alleged

discrimination based on a protected class or as a class of one. The Court therefore dismisses

Rote's § 1985 claim without prejudice. If Plaintiff believes that he can plausibly allege sufficient

facts showing that Judges Egan or Steele engaged in nonjudicial acts that amounted to

discrimination against Plaintiff as a "class of one" by treating him without a rational basis he

may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

## B.  PLF and Bernick's Motion to Dismiss

### 1.  42 U.S.C. § 1983

Plaintiff asserts two claims under § 1983 against the PLF and its former executive

director, Bernick. Plaintiff's first claim alleges that these Defendants violated his right to

freedom of speech under the United States Constitution.[2] His second claim alleges that these Defendants deprived him of due process, as guaranteed under the United States Constitution.

### a. Standards

To state a claim under 42 U.S.C. § 1983, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). When a plaintiff asserts a claim under § 1983, the plaintiff must show both causation-in-fact and proximate (*i.e.*, legal) causation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations of causation in a § 1983 claim "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "Sweeping conclusory allegations [regarding causation] will not suffice." *Id.* Instead, the plaintiff must allege that he or she suffered a specific injury caused by the specific conduct of a defendant and also must show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

An entity other than a natural person, such as a local governmental entity, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, an entity "is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation,

---

[2] Plaintiff also references the Oregon Constitution in his § 1983 claim, but § 1983 allows a plaintiff to sue for violations only of federal, not state, law. *See Galen v. City of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) (stating that § 1983 requires a plaintiff "to demonstrate a violation of federal law, not state law"); *Canell v. Or. Dep't of Justice*, 811 F. Supp. 546, 550 (D. Or. 1993) ("[O]nly violations of the federal constitution or federal law are cognizable under 42 U.S.C. § 1983, not state law violations.").

or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Parprotnik*, 485 U.S. 112, 121 (1988)). *Monell* liability may exist without any formal policy permitting the challenged conduct where the government entity has a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.3d 1342, 1346 (9th Cir. 1992)); *see also Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (noting that a plaintiff can show a policy or practice through "a longstanding practice or custom" in addition to "an expressly adopted official policy").

Under narrow circumstances, a government entity's failure to train its employees may be considered a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983."). "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (simplified). In still rarer instances, however, the duties of a specific employee make the need for certain training obvious. *City of Canton*, 489 U.S. at 390. A classic example involves the duty of a police officer to chase fleeing felons; that duty makes the need for training on the constitutional use of force by officers obvious. *Id.* at 390 n.10.

*Monell* liability also may be triggered "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon*, 6 F.4th at 974

(quotation marks omitted). To prevail on a ratification theory, a plaintiff must show both that

wrongdoer's decision was "cast in the form of a policy statement" and that a supervisor with

policy making authority expressly approved of the decision. *Gillette*, 979 F.3d at 1348.

Additionally, there is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880

F.2d 1040, 1045 (9th Cir. 1989). "A defendant may be held liable as a supervisor under § 1983

'if there exists either (1) his or her personal involvement in the constitutional deprivation, or

(2) a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646

(9th Cir. 1989)). The requisite showing can be established by demonstrating that the supervisor:

(1) set in motion a series of acts by others or knowingly refused to terminate a series of acts by

others, which the supervisor knew or reasonably should have known would cause others to inflict

constitutional injury; (2) had his or her own culpable action or inaction in the training,

supervision, or control of his or her subordinates; (3) acquiesced in the constitutional deprivation

by subordinates; or (4) engaged in conduct that shows reckless or callous indifference to the

rights of others. *Id.* at 1207-08; *see also Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018)

("The requisite causal connection can be established by setting in motion a series of acts by

others, or by knowingly refusing to terminate a series of acts by others, which the supervisor

knew or reasonably should have known would cause others to inflict a constitutional injury."

(quoting *Starr*, 652 F.3d at 1207-08)). "A plaintiff must allege facts, not simply conclusions, that

show that an individual was personally involved in the deprivation of [the plaintiff's] civil

rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A supervisor might be liable

despite not personally participating in the alleged deprivation if the supervisor "implement[ed] a

policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (simplified).

### b. Analysis

At oral argument, Plaintiff emphasized that the basis for his claims against the PLF and Bernick is the PLF's decision to hire a lawyer to represent Zweizig in his lawsuit before Judge Steele "without insurance liability to Zweizig." Plaintiff contends the PLF made this decision in retaliation against him for his posts about the PLF on his blog and for his lawsuits filed against other PLF-represented lawyers. For purposes of the pending motions to dismiss, the Court will assume without deciding that the PLF and Bernick are state actors under § 1983.

### i. Supervisor Liability

For his free speech retaliation claim, Plaintiff alleges that the PLF retaliated against him for his blog posts critical of the PLF and that the PLF heeded to the requests of Zweizig and his attorneys to "punish Rote for Rote's critiques of the Court." ECF 51, ¶ 127. This punishment allegedly took the form of providing legal representation to Zweizig without charge. ECF 51, ¶¶ 108, 127. Plaintiff alleges that Bernick authorized the decision to provide legal representation for Zweizig. ECF 51, ¶¶ 22, 108. These allegations, however, fail to state a First Amendment retaliation claim under § 1983 because Plaintiff has not alleged facts showing that it is plausible that the PLF decided to provide legal representation to Zweizig in retaliation against Plaintiff's blog posts, rather than for the legitimate interests of the PLF. The fact that Plaintiff posted comments critical of the PLF does not make plausible his conclusory allegation that the PLF retaliated against him by providing legal representation without a legitimate basis to Zweizig, who is not an attorney. For example, the PLF may very well have decided to provide "repair counsel" to Zweizig after his PLF-insured attorney became unavailable. Plaintiff alleges no other facts in support of his conclusion. Without more, he fails plausibly to state a First Amendment

retaliation claim under § 1983. Further, if the PLF did not retaliate against Plaintiff, then Bernick may not be held liable for her personal involvement in the PLF's action and there would be no causal connection between her and any alleged constitutional violation by the PLF.

    As for his procedural due process claim, Plaintiff alleges that Bernick knew that counsel hired by the PLF filed the Jones and Kugler Transcripts in the Judge Herndon Lawsuit. ECF 51, ¶ 84. Plaintiff also alleges, on information and belief, that the PLF maintains an "offshore bank account" from which it draws funds to "bribe judges" to hand down rulings favorable to the PLF. ECF 51, ¶ 10. As explained above, the Court will not accept as plausible these sorts of speculative, conclusory, and unsupported allegations. Plaintiff alleges no facts to support his conclusion that the PLF maintains an offshore bank account, let alone one used to bribe judges. Plaintiff also has not alleged that Bernick knew of or participated in those alleged actions. Thus, the Court does not find plausible Plaintiff's conclusory allegations. *See Fields*, 427 F.3d at 1208-09; *Starr*, 652 F.3d at 1216 (stating that to be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

    This leaves Bernick's alleged knowledge of the filing of the Jones and Kugler Transcripts as the sole basis for Rote's procedural due process claim against Bernick. "A procedural due process claim has two elements: '(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) (quoting *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Id.* at 1225. The fact that Bernick may have had knowledge that a PLF-provided attorney filed

the Jones and Kugler Transcripts in a pending legal proceeding is insufficient to show that Bernick deprived Plaintiff of his right to due process. Further, Plaintiff has not alleged that he was deprived of any notice and or opportunity to be heard with respect to the filing of those transcripts. If counsel filed either the Jones or Kugler Transcripts in the Judge Herndon Lawsuit, Plaintiff would have had a fair opportunity to object or to move to strike them, both before Judge Herndon at the trial court level and later before the Oregon Court of Appeals on appeal. Bernick's approval or knowledge that PLF-hired attorneys may have filed the transcripts does not amount to a violation of Plaintiff's right to procedural due process. Plaintiff, therefore, fails to state a procedural due process claim against Bernick under § 1983. Thus, the Court dismisses Plaintiff's § 1983 claims against Bernick without prejudice. If Plaintiff believes that he can allege sufficient facts to support his § 1983 claim against Bernick, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### ii. *Monell* Liability

The Ninth Circuit applies *Monell* to private entities acting under the color of state law sued under § 1983. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). The PLF is not a private entity but also not, strictly speaking, a local government entity such as a county or city as contemplated in *Monell*. Because the Ninth Circuit has held that the standards for § 1983 liability under *Monell* also extend to private entities acting under the color of state law, the Court assumes without deciding that *Monell* liability applies to quasi-public organizations, such as the PLF. Thus, Plaintiff must adequately allege that the PLF implemented a policy, custom, or well-settled practice that caused a violation of his constitutional rights, or a decisionmaker made or ratified the alleged violation. *Gordon*, 6 F.4th at 973-94. If he alleges that the PLF's failure to train its employees caused the constitutional violations, he must also adequately allege that the

failure amounted to a deliberate indifference to his constitutional rights. *See City of Canton*, 489 U.S. at 389.

Plaintiff alleges that the PLF failed adequately to train and supervise its employees, which led to the violation of his constitutional rights. ECF 51, ¶ 146. Plaintiff, however, does not identify exactly how the PLF failed to train its employees or which of the PLF's policies led to the "overt and tacit encouragement" of the alleged constitutional violations. ECF 51, ¶ 146. Nor does Plaintiff allege facts showing that any PLF policy amounted to a deliberate indifference to his constitutional rights. Instead, Plaintiff argues only that the PLF's "full endorsement" of the filing the Jones and Kugler Transcript "ten times in five separate lawsuits is self-evident" of the PLF's pattern or practice of constitutional violations. ECF 60, at 17. Filing a transcript in more than one lawsuit, however, does not show a policy or custom that leads to a constitutional violation. Plaintiff therefore fails to state a § 1983 claim under *Monell* against the PLF. Thus, the Court dismisses Plaintiff's § 1983 claims against the PLF without prejudice. If Plaintiff believes that he can allege sufficient facts to support his § 1983 claim against the PLF, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### 2.  42 U.S.C. § 1985

As explained above, to state a § 1985 claim, a plaintiff must allege discrimination based on a protected class. *See Bray*, 506 U.S. at 270. Plaintiff has not alleged that the PLF or Bernick, or indeed any Defendant, engaged in any discrimination based on a protected class. As with the State Defendants, Plaintiff argues that the PLF and Bernick discriminated against him as a "class of one." *See Vill. of Willowbrook*, 528 U.S. at 564. Plaintiff argues that the PLF and Bernick's alleged approval of filing the Jones and Kugler Transcripts in the five separate lawsuits constitutes discrimination against him as a "class of one." Approval of filing transcripts from hearings in prior cases, however, does not show that the PLF and Bernick treated Plaintiff

differently than similarly situated individuals. Further, Plaintiff has not plausibly alleged facts

showing that any differential treatment from filing those transcripts lacked a rational basis.

Plaintiff, therefore, has failed to state a § 1985 claim against either the PLF or Bernick. Thus, the

Court dismisses Plaintiff's § 1985 claim against these Defendants without prejudice. If Plaintiff

believes that he can plausibly allege sufficient facts to state a claim under § 1985, he may file a

motion to amend under Rule 15 that complies with Local Rule 15-1.

### 3.  28 U.S.C. § 2201

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows individuals to seek a

declaration of the constitutionality of a disputed governmental action. *See Duke Power Co. v.*

*Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978). If there is an actual controversy

between the parties, the court has discretion whether to exercise jurisdiction over a claim for

declaratory judgment. *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, --- F.4th ---, 2021

WL 5314015, at *3 (9th Cir. 2021) ("[A] district court is 'under no compulsion to exercise [its]

jurisdiction' over declaratory claims." (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491,

494 (1942))).

Here, Plaintiff seeks a declaration that Defendants violated his rights under the First and

Fourteenth Amendments to the U.S. Constitution. ECF 51, ¶ 167. Because the Court concludes

that Plaintiff fails to state any claim against the PLF or Bernick, the Court declines to exercise

jurisdiction over Plaintiff's claim for declaratory relief. *See Staacke*, 841 F.2d at 280 (stating that

the Declaratory Judgment Act does not create an independent basis for subject matter

jurisdiction). Plaintiff also seeks sweeping injunctive relief against the United States and State of

Oregon but does not seek any injunctive relief against the PLF or Bernick. Thus, to the extent

Plaintiff intended to seek injunctive relief against the PLF or Bernick, the Court dismisses that

claim without prejudice.

**C. Federal Defendants' Motion to Dismiss**

**1. Federal Judges**

Many of Plaintiff's allegations about the federal judge Defendants involve actions taken in their judicial capacity and are therefore barred by judicial immunity. As with the state judge Defendants, Plaintiff stated at oral argument that his claims against the federal judge Defendants arise out of their nonjudicial acts, such as soliciting rulings from other judges that were adverse to Plaintiff. Assuming without deciding that judicial immunity would not protect those acts, Plaintiff has not alleged sufficient facts plausibly to support his conclusory allegations that these judges improperly solicited from another judge any retaliatory ruling unfavorable to Plaintiff. Still yet, even if Plaintiff could allege sufficient facts to support his conclusions that these federal judge Defendants engaged in activity outside the scope of their absolute judicial immunity, Plaintiff could not state any claim against these federal Defendants because there is no *Bivens* claim available against this class of Defendants for First Amendment retaliation or violations of procedural due process and the Court declines to extend *Bivens*. Thus because any amendment would be futile, for the reasons explained below, the Court dismisses Plaintiff's *Bivens* claims against the federal judge Defendants with prejudice.

**a. Judicial Immunity**

As explained above with respect to the state judge Defendants, judges have absolute immunity for judicial acts performed in their judicial capacity. *Moore*, 96 F.3d at 1243-44; *Mullis*, 828 F.2d at 1388. Many of Plaintiff's allegations about the federal judge Defendants challenge judicial acts protected by absolute judicial immunity.

**i. Judge Kugler**

Plaintiff alleges that during the hearing on the order to show cause why he should not be held in contempt for sending a letter to Judge Kugler, Judge Kugler encouraged the U.S.

Attorney's Office to pursue criminal contempt charges against Plaintiff for sending that letter and later asked Plaintiff to withdraw the judicial ethics complaint that Plaintiff filed against Judge Kugler. ECF 51, ¶¶ 48-49. Plaintiff also alleges that Judge Kugler remanded Plaintiff's case to New Jersey state court and "strategized" with counsel representing the parties adverse to Plaintiff about litigation strategy. ECF 51, ¶¶ 42, 159. These acts are all judicial in nature and protected by absolute judicial immunity. The Court therefore dismisses Plaintiff's claims against Judge Kugler arising from these allegations with prejudice.

Plaintiff also alleges that Judge Kugler requested that the PLF provide legal representation to Zweizig for free. Assuming without deciding that this request is a nonjudicial act, Plaintiff has failed to allege sufficient facts showing the plausibility of Plaintiff's contention that U.S. District Judge Kugler called the PLF. Plaintiff fails to provide any well-pleaded facts in support of his conclusory allegation. Plaintiff also alleges that Judge Kugler solicited various rulings adverse to Plaintiff from other judges, including U.S. Magistrate Judge Papak, state court Judge Weishaupl, U.S. District Judge Mosman, or arbitrator Crow. ECF 51, ¶¶ 15-16, 57, 71, 103. Plaintiff fails to support his speculative and conclusory allegations, many of which are made on information and belief, with sufficient supporting facts. The only supporting fact that Plaintiff offers is that Judges Kugler and Mosman both served as judges on the Foreign Intelligence Surveillance Court. ECF 51, ¶ 103. That fact, however, does not make Plaintiff's other allegations plausible, especially that Judge Kugler called Judge Mosman to request that he rule against Plaintiff. Thus, Plaintiff's conclusory allegations do not overcome judicial immunity. Further, because there is no *Bivens* claim available to Plaintiff, as explained below, the Court dismisses Plaintiff's *Bivens* claim against Judge Kugler with prejudice.

### ii. Judge Papak

Plaintiff alleges that Judge Papak confirmed Crow's arbitration award, ignored evidence in confirming the arbitration award, refused to recuse himself, engaged with counsel representing parties adverse to Plaintiff about litigation strategy, and granted motions to quash. ECF 51, ¶¶ 15, 63, 142, 159. These are all judicial acts that provide Judge Papak with absolute judicial immunity. The Court therefore dismisses with prejudice Plaintiff's claims against Judge Papak arising from these judicial acts.

Plaintiff also alleges, on information and belief, that Judge Papak called Judge Herndon to request that he deny Plaintiff due process. ECF 51, ¶ 88. This allegation does not overcome judicial immunity because Plaintiff has not alleged sufficient facts to establish plausibility. *See Fields*, 427 F.3d at 1208-09. Thus, Plaintiff has alleged no facts to support his conclusory allegation made on information and belief. As explained below, because there is no *Bivens* claim available to Plaintiff, the Court dismisses Rote's *Bivens* claim against Judge Papak with prejudice.

### iii. Judge Hernández

Plaintiff's only allegations about U.S. District Judge Hernández concern only judicial acts that are protected by absolute judicial immunity. Plaintiff alleges that Judge Hernández granted a motion to quash Plaintiff's subpoena for the recordings of the jury trial, denied his request to interview the jury in that trial, denied certain discovery requests, granted a motion *in limine* that prevented Plaintiff from introducing evidence of the forensic report concerning Zweizig's hard drive, and conspired with other judges in making these rulings. ECF 51, ¶¶ 14, 91, 100, 159. Even accepting Plaintiff's factual allegations of conspiracy, Plaintiff only challenges action that are judicial acts and thus protected by judicial immunity. *See Ashelman*, 793 F.2d at 1078.

Plaintiff also alleges that it "is not known" who ordered the destruction of the recording of the jury trial in the Judge Hernández Lawsuit, but he alleges that Judge Hernández was the only one with authority to do so. ECF 51, ¶ 101. Even if Judge Hernández had asked the court reporter (Walker) to destroy the recording of the trial (and Plaintiff has alleged absolutely no evidence of that), such an act would be judicial in nature because it involved actions taken in a judge's judicial capacity. *See McGuire*, 2009 WL 4456310, at *4 ("An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial capacity." (citing *Stump*, 435 U.S. at 362)); *see also Tanner*, 879 F.2d at 576 (stating that judges have "absolute immunity even when their actions are erroneous, malicious, or in excess of judicial authority"). As explained below, because there is no *Bivens* claim available to Plaintiff, the Court dismisses Plaintiff's *Bivens* claim against Judge Hernández with prejudice.

### iv.  Judge Mosman

Plaintiff alleges that U.S. District Judge Mosman refused to recuse himself and that he relied on false allegations to dismiss Plaintiff's claims against lawyers represented by the PLF. ECF 51, ¶¶ 13, 114. Plaintiff alleges that the fact Judge Mosman relied on false allegations in making that ruling is "self-evident of a *quid pro quo*" agreement between him and the PLF and that he should have disclosed that agreement to Plaintiff. ECF 51, ¶¶ 13, 114. Even without considering Plaintiff's allegations to be entirely speculative and conclusory and even if there were such an agreement, Judge Mosman's order dismissing Plaintiff's claims is a judicial act and thus protected by absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078.

Plaintiff argues that judicial immunity does not apply to that dismissal because the Ninth Circuit later concluded that Judge Mosman lacked subject matter jurisdiction over some of the claims. To lose the protection of judicial immunity, however, a judge must act in clear absence

of all subject matter jurisdiction, not merely in excess of jurisdiction. *See Mullis*, 828 F.2d at 1389 (distinguishing between "an act in the clear absence of jurisdiction" and "an act in excess of jurisdiction" for purposes of judicial immunity and stating that a "clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction"); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993) ("Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes."). Further, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Judge Mosman's dismissal of Plaintiff's claims against the non-federal defendants is protected by judicial immunity because he acted only in excess of jurisdiction with respect to some of Plaintiff's claims and retained jurisdiction over Plaintiff's claims asserted against Walker. In other words, when Judge Mosman dismissed Plaintiff's claims against Walker and the other non-federal defendants, he did not act in clear absence of all jurisdiction. Thus, Judge Mosman's orders of dismissal are protected by judicial immunity. The Court dismisses with prejudice Plaintiff's claims against Judge Mosman arising from those judicial acts.

Plaintiff also alleges, on information and belief, that Judge Mosman requested that the PLF to provide Zweizig with representation, solicited arbitrator Crow to find in favor of Zweizig, and ordered court reporter Walker to destroy the recordings of the jury trial from the Judge Hernández Lawsuit. Further, Plaintiff alleges that Judge Mosman "solicited" rulings adverse to Plaintiff from Judges Papak, Steele, and Lininger. ECF 51, ¶¶ 15, 107, 116. Plaintiff, however, does not support these speculative and conclusory allegations with any facts and thus has failed to show plausibility. *See Starr*, 652 F.3d at 1216. Accordingly, these allegations also do not overcome judicial immunity. Finally, as explained below, because there is no *Bivens* claim

available to Plaintiff, the Court dismisses Plaintiff's *Bivens* claim against Judge Mosman with prejudice.

### b. *Bivens*

Even if Plaintiff could allege facts sufficient to overcome judicial immunity for what he contends are nonjudicial acts, Plaintiff could not state a *Bivens* claim against any of the federal judge Defendants because there is no available *Bivens* claim that would be implicated under these facts. At oral argument, all parties agreed to treat Plaintiff's § 1983 claims against the Federal Defendants as if they were alleged under *Bivens*.[3] *See Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) ("[A] *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.").

The Supreme Court has thus far accepted the availability of *Bivens* actions in only three contexts: violation of the Fourth Amendment's prohibition of unreasonable searches and seizures; violation of the Eighth Amendment's prohibition of cruel and unusual punishment; and violation of the Fifth Amendment's prohibition of sex discrimination. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (describing the three *Bivens* contexts). The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. Extending *Bivens* "is a significant step under separation-of-powers principles," and Congress is the branch of government with the "substantial responsibility to determine whether, and the

---

[3] Section 1983 provides recourse only for the actions of persons acting under color of state law, not federal law, although the law violated must be federal. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). Congress enacted § 1983 as a mechanism to hold state officials accountable in federal court. *Id.*, at 427-28. Section 1983 is not the proper mechanism to sue federal officials. *Id.* Instead, a *Bivens* action allows plaintiffs to sue federal officials for violations of certain constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Id.* at 1856.

The Supreme Court "has 'consistently refused to extend *Bivens* [liability] to any new context or new category of defendants.' . . . for the past 30 years." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001))). "The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). Thus, in considering possible extensions of *Bivens*, courts "engage in a two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The first step is to "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Malesko*, 534 U.S. at 68). If so, the second step is to "ask whether there are any special factors that counsel hesitation about granting the extension." *Id.* (simplified).

Plaintiff's claims present a new context because they arise under different constitutional rights (the First Amendment and the Fifth Amendment right to procedural due process) and involve a new category of defendants, namely, federal judges. Plaintiff has not alleged that Defendants conducted an unreasonable search or seizure, imposed cruel and unusual punishment, or discriminated against him based on sex. Because Plaintiff's claims arise in a new context, the Court considers whether any special factors counsel hesitation. The Court finds persuasive the special factors described in the Federal Defendants' motion. ECF 64, at 25-26. These factors include: (1) Plaintiff's ability to appeal the underlying legal decisions that he claims were improperly influenced by the federal judges, which serves as an alternative remedial structure to a new *Bivens* claim; and (2) the fact that the legislative branch is best positioned to determine

federal employees' exposure to monetary damages for constitutional torts, which raises

separation of powers concerns. Accordingly, the Court declines to extend *Bivens* to this context.

Because there is no *Bivens* claim available to Plaintiff even if he could allege facts sufficient to

overcome judicial immunity, the Court dismisses Plaintiff's *Bivens* claims against federal Judges

Kugler, Papak, Hernández, and Mosman with prejudice.

### c.   42 U.S.C. § 1985

Even if Plaintiff could plead sufficient facts to overcome judicial immunity, Plaintiff's

claim under § 1985 against these Defendants would fail because he has not alleged facts showing

that the federal judge Defendants engaged in any conspiracy to discriminate against Plaintiff

based any protected class. *See Bray*, 506 U.S. at 270. Instead, as with his § 1985 claim against

the PLF and Bernick, Plaintiff contends that the federal judge Defendants discriminated against

him as a "class of one" as recognized in *Village of Willowbrook*. Plaintiff argues that the federal

judge Defendants discriminated against him as a class of one by considering the Jones and

Kugler Transcripts filed in their cases. ECF 65, at 19. Plaintiff contends that consideration of that

evidence affected these judges' rulings. The fact that the federal judge Defendants may have

considered the Jones and Kugler Transcripts filed in their own cases, however, does not show

that those judges treated Plaintiff differently than other similarly situated individuals and did so

with no rational basis. It also squarely runs into the problem of judicial immunity because these

challenged actions involve judicial determinations in the judges' own cases, which are judicial

acts, not nonjudicial acts. Thus, Plaintiff has failed to state a claim under § 1985 against the

federal judge Defendants. Because he did not allege any nonjudicial conduct to support his

§ 1985 claim against the federal judge Defendants, the Court dismisses this claim with prejudice.

2. **Walker**

    a. **Issue Preclusion**

The Federal Defendants argue that both issue and claim preclusion bar Plaintiff's claims against court reporter Walker. Issue preclusion, also known as collateral estoppel, "precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding. . . . The issue must have been actually decided after a full and fair opportunity for litigation." (quotation marks and citations omitted)). The party asserting issue preclusion must show: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessarily decided, which is also described as necessary or essential to the judgment. *See Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017).

The Federal Defendants argue that the accuracy of Walker's transcript was already litigated in the Judge Hernández Lawsuit, the case in which Walker allegedly falsified the jury trial transcript. Federal Defendants argue that issue preclusion applies because Judge Hernández already denied Plaintiff's motion to compel Walker's transcription materials. *See* 3:15-cv-2401-HZ, ECF 313. Whether Walker falsified the trial transcript, however, was not necessary to the resolution of that motion to compel and thus was not actually litigated or decided in Judge Hernández's order. The order simply states: "Defendant has provided no basis for the Court to compel the production of Ms. Walker's recordings. The proper avenue for Defendant to challenge the accuracy of the certified transcript is through Federal Rule of Appellate

Procedure 10." 3:15-cv-2401-HZ, ECF 313. Thus, Defendants have not shown that the issue of the accuracy of the trial transcript was fully litigated in the Judge Hernández Lawsuit.

The Federal Defendants also argue that the issue of the accuracy of Walker's transcript was fully litigated in the Judge Mosman Lawsuit. After the conclusion of the Judge Hernández Lawsuit, Plaintiff added Walker as a defendant in the Judge Mosman Lawsuit and asserted claims against her for fraud and intentional infliction of emotional distress. The United States substituted itself as a defendant in place of Walker and removed the case to federal court. Judge Mosman then dismissed the United States from the case because Plaintiff's claims against Walker did not fall within the United States' waiver of sovereign immunity under the FTCA. *See* 3:19-cv-82-MO, ECF 38, at 7. Plaintiff did not appeal Judge Mosman's order dismissing the United States from the case.

The Federal Defendants argue that in the Judge Mosman Lawsuit, as in this lawsuit, Plaintiff claimed that the defendants, including Walker, conspired to deprive him of due process. The Federal Defendants argue that claim against Walker in the Judge Mosman Lawsuit required resolution of whether Walker falsified the Judge Hernández trial transcript. That issue, however, was never "actually litigated" in the Judge Mosman Lawsuit. Instead, Judge Mosman dismissed the United States from the case for lack of subject matter jurisdiction. Issue preclusion therefore does not apply.

### b. Claim Preclusion

Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). An action is barred when an earlier adjudication: (1) involved the same claim as the later action, (2) reached a

final judgment on the merits, and (3) involved the same parties or their privies. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).

Under Rule 41(b) of the Federal Rules of Civil Procedure, a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits. The Supreme Court has held that a dismissal for lack of jurisdiction under Rule 41(b) is "not ordinarily a bar to a subsequent action on the same claim" because "there must be at least one decision on a right between the parties" before preclusionary principles apply. *Costello v. United States*, 365 U.S. 265, 285 (1961) (quotation marks omitted); *see also Haywood v. Drown*, 556 U.S. 729, 766 (2009) (Thomas, J., dissenting) ("And because the dismissal of § 1983 claims from state court pursuant to NYCLA § 24 is for lack of subject-matter jurisdiction, it has no preclusive effect on claims refiled in federal court and thus does not alter the substance of the federal claim." (citations omitted)); *cf. CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 433 (2016) (describing dismissal based on sovereign immunity as a dismissal for "nonmerits reasons"). The Ninth Circuit similarly has described that a dismissal for lack of subject matter jurisdiction does not serve as an adjudication on the merits for purposes of claim preclusion. *See Harris v. Arizona Bd. of Regents*, 730 F. App'x 439, 440 (9th Cir. 2018) (concluding that a dismissal for lack of subject matter jurisdiction "would not constitute an adjudication on the merits" and citing Rule 41(b) of the Arizona Rules of Civil Procedure, which is the same in relevant part as the Rule 41(b) of the Federal Rules of Civil Procedure); *In re Brooks-Hamilton*, 271 F. App'x 654, 657 (9th Cir. 2008) (stating that "[a] dismissal for lack of subject matter jurisdiction is not a final judgment on the merits, Fed. R. Civ. P. 41(b)" and concluding that such a dismissal precludes a subsequent determination of the issue of jurisdiction but not a subsequent determination of any merits issue); *In re Elias*, 216 F.3d 1082, 2000 WL 431589, at *1 (9th Cir. 2000) (unpublished table decision)

("A dismissal for sovereign immunity, however, is based on jurisdictional grounds; therefore, it is not a decision on the merits for res judicata purposes, at least as to parties other than the state."); *cf. Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

As discussed in the cases cited above, Judge Mosman's dismissal for lack of subject matter jurisdiction does not give rise to claim preclusion. *See also Wood v. County of Contra Costa*, 2020 WL 1505717, at *3 (N.D. Cal. Mar. 30, 2020) ("The Prior Action, however, was dismissed for lack of subject matter jurisdiction under the 'Rooker-Feldman' doctrine, and a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits. Accordingly, to the extent the First Cause of Action is asserted on behalf of TP, it is not barred by res judicata." (citations omitted)); *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1194 (S.D. Cal. 2005) ("Dismissal for lack of subject matter jurisdiction is not a judgment on the merits, and therefore it has no claim preclusive or res judicata effect."). The Court next considers the merits of Plaintiff's claims against Walker.

### c. *Bivens*

As explained above, the parties agreed to treat Plaintiff's § 1983 claims against the Federal Defendants as alleged under *Bivens*. As with Plaintiff's claims against the federal judges, Plaintiff's claim against Walker presents a new *Bivens* context and a new type of defendant. Plaintiff alleges that Walker retaliated against Plaintiff's exercise of his free speech rights by intentionally omitting two statements from the jury trial transcript in the Judge Hernández Lawsuit and later destroying the recordings of that trial allegedly at the request of either Judge Hernández or Judge Mosman. Plaintiff also asserts these acts amount to a violation of his right to procedural due process. These claims depart from the recognized *Bivens* contexts because they

arise under different constitutional rights and involve a new class of defendants, here, court reporters. *See Abbasi*, 137 S. Ct. at 1854-55. Plaintiff has not alleged that Walker conducted an unreasonable search and seizure, inflicted cruel and unusual punishment, or discriminated against him based on sex. For the reasons stated above with respect to the federal judge Defendants, the Court declines to extend *Bivens* to Plaintiff's claims against Walker. Because there is no *Bivens* claim available to Plaintiff for his claims against Walker, the Court dismisses Plaintiff's *Bivens* claim against Walker with prejudice.

### d.  42 U.S.C. § 1985

A plaintiff may sue under § 1985 for the conspiracies committed by private actors. *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). Thus, Plaintiff's claim under § 1985 against Walker does not fail for lack of state action. Rather, Plaintiff's claim under § 1985 against fails because Plaintiff has not alleged sufficient facts plausibly showing that Walker engaged in a conspiracy to discriminate against Plaintiff based on any protected class. *See Bray*, 506 U.S. at 270. As with Plaintiff's claims under § 1985 against the PLF, Bernick, and the federal judge Defendants, Plaintiff contends that Walker discriminated against him as a "class of one," a theory recognized in *Village of Willowbrook*. Plaintiff, however, fails to allege sufficient facts plausibility to state a claim under that theory. Accordingly, the Court dismisses Plaintiff's claim under § 1985 claim against Walker without prejudice. If Plaintiff believes that he can allege sufficient facts showing that Walker discriminated against him as a "class of one," he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

## D.  Leave to Amend

Plaintiff requests leave to amend his Second Amended Complaint. The Court, however, will not consider that request in the abstract. If Plaintiff believes that he can cure the deficiencies identified in this Opinion and Order, he may file a motion to amend under Rule 15 if his motion

complies with Local Rule 15-1 by attaching a proposed Third Amended Complaint. Further,

Plaintiff only may move for leave to amend with respect to the claims that the Court has

dismissed without prejudice in this Opinion and Order. These claims are Plaintiff's claims under

§§ 1983 and 1985 against Judge Egan and Judge Steele arising from any nonjudicial acts;

Plaintiff's claims under §§ 1983, 1985, and 2201 against the PLF and Bernick; and Plaintiff's

claim under § 1985 against Walker. In addition, Plaintiff may not add any new defendants in a

proposed Third Amended Complaint.

## CONCLUSION

The Court GRANTS all pending motions to dismiss (ECF 55, ECF 56, and ECF 64) and

dismisses all claims asserted against all Defendants other than the Colorado Judicial Department

and Colorado Judge Elizabeth Weishaupl.

**IT IS SO ORDERED**.

DATED this 30th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge